THOMAS CRONLEY

*v.*

BRIDGET CRONLEY et al.

On April 27th, 1850, a mortgage was given by John T. Cronley and his wife, Bridget, on the house and lot in which they then lived. On May 13th, 1850, the mortgagee assigned it to Z. S. C., who, on April 27th, 1857, assigned it to Bridget, and she, on August 13th, 1880, assigned it to complainant. John T. Cronley died in California on April 13th, 1854, and his widow, Bridget, and their children continued to occupy the premises, her dower therein never having been assigned. There was no administration on his estate. At various times between October 16th, 1861, and December 18th, 1873, Bridget gave four mortgages on the premises, which are now held by one of the defendants. On April 12th, 1872, Bridget received the moneys for the taking of a portion of the premises for a public road and for damages thereto, and she spent a part of those moneys in cutting down the front of the lot to the grade of the public road. On foreclosure of complainant's mortgage—*Held*, (1) that Bridget was not, by virtue of her possession of the premises, obliged to pay the annual interest on complainant's mortgage; (2) that the unexpended balance received by her from the public road condemnation should be credited on complainant's mortgage as of the day when she received the moneys; (3) that the other mortgages are liens only on Bridget's interest in the premises as widow, although, when she gave them, she held complainant's mortgage, and assigned it to him afterwards.

Bill to foreclose.   On final hearing on pleadings and proofs.

*Mr. J. Henry Stone*, for complainant.

*Mr. J. H. Meeker, Jr.*, for Mary Cronley.

*Mr. Edward Oakes*, for Mary Kearon.

THE CHANCELLOR.

The bill is filed to foreclose a mortgage for $200 and interest, upon a house and lot in the township of Bloomfield, in Essex county, given by John T. Cronley, deceased, with his wife, the defendant, Bridget Cronley, to William D. Condit, April 27th,

Cronley *v.* Cronley.

1850, and by the mortgagee assigned, May 13th, in the same year, to Zenas S. Crane, who assigned it, April 27th, 1857, to the before-mentioned Bridget Cronley, by whom it was assigned to the complainant, August 13th, 1880. John T. Cronley, the mortgagor, lived on the property up to the time when he went to California, which was in May, 1850. He died in California, April 13th, 1854. After he left this state, his widow and children continued to reside on the property. His estate was not administered upon, although he left a will, made before he went to California, by which, however, he merely empowered his executor (his brother Thomas) to sell his real estate. On the 12th of April, 1872, the widow received from the Essex public road board $141.40 for part of the property taken by that body and damages to the rest of it by reason of such taking. The property was condemned as her property, and she alone received the money, although the receipt for it was signed by her and her son and daughter. Her husband had two other children, by a previous marriage, but they did not sign the receipt, and it does not appear that they were requested to do so. On the 16th of October, 1861, the widow gave a mortgage for $100 and interest, upon the property, to Warren S. Baldwin, who assigned it to the defendant Mary Kearon. On the 19th of November following, she gave another mortgage upon the property, for the same amount, with interest, to Mary Kearon, and afterwards, on the 29th of July, 1869, and the 18th of December, 1873, gave to Mary Kearon two other mortgages upon the premises, each, also, for $100, with interest.

The defendant Mary Cronley (who is one of the children of John T. Cronley) insists that the complainant's mortgage is not a valid security, because, as she alleges, the widow was bound to pay off the mortgage while her husband was in California, with money sent to her by him for the purpose, and that if not bound to pay it off with that money, she was bound to pay it off very soon after his death, with money she received from California as a contribution from his friends among his fellow miners there, and money received by her from a friendly society here, of which he was a member, for a " benefit " payable upon

his death, and the money received by her from the road board; or at least that she was, because she was in possession of the property, bound to keep down the interest; and that the complainant being, as Mary Cronley alleges, only colorably the owner of the mortgage, and the widow the real owner, the former is not entitled to a decree for any interest on the mortgage.

Mary Kearon insists that, inasmuch as the widow represented that she was the owner of the property when she gave the four mortgages for $100 each, the complainant's mortgage should, in equity, be postponed to those mortgages.

The widow remained in possession of the mortgaged premises after her husband's death, as such widow. Her dower has never been assigned. When her husband died, all of the four children lived with her. The oldest appears to have been about fifteen years old at that time. By the statute, as widow, she was entitled to the possession of the property without liability to pay rent therefor until her dower should have been assigned to her. This right of possession did not devolve upon her the duty of paying the interest upon the mortgage. The claim that the mortgage should be held to be satisfied, in view of the fact, as alleged, that she received money from her husband while he was in California—enough to pay it off—which she ought to have applied to its payment, is wholly unsupported. And so, too, as to the allegation that she received from her husband's estate, after his death, the money (the " benefit " and contributions) with which she purchased the mortgage. The money received from the road board was paid to her, as owner of the property, through a mistake on the part of the board as to the ownership. Part of it (about $82) she expended in repairing the damage done to the property by the cutting down, in front of the house, of the grade of the avenue for which the land was taken. The balance ($59) should be credited on the mortgage as of April 12th, 1872.

The mortgages held by Mary Kearon are liens upon nothing more than the interest which the widow had, as widow, in the premises, when they were given. They cannot be held to be

equitable assignments of the complainant's mortgage, which was held by the widow when they were made. And if they were so, the assignment to the complainant was *bona fide* and for a valuable consideration, and he took the mortgage free from all latent equities, in favor of third persons, of which he had no notice. The evidence of notice to him is not such as to charge him with the equity claimed, if it existed. There will be a decree in accordance with the views above expressed.